Matter of S.K. (2024 NY Slip Op 50290(U))

[*1]

Matter of S.K.

2024 NY Slip Op 50290(U)

Decided on March 19, 2024

Supreme Court, Broome County

Guy, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 19, 2024
Supreme Court, Broome County

In the Matter of the Retention of S.K., 
 A patient at United Health Services Hospitals, Inc. In the Matter of the Involuntary Treatment of S.K., 
 A patient at United Health Services Hospitals, Inc.

 Index Nos. CA2024000593, 
CA2024000622
Kimberlee N. DeFazio, Esq.
Attorney for the Petitioner
Aswad & Ingraham, LLP
46 Front Street
Binghamton, New York 13905
Mental Hygiene Legal Service (3rd Dept.)
Kristin Snyder, Esq., of counsel
Attorney for S.K.
State Office Building
44 Hawley Street
Binghamton, New York 13901-4435

David H. Guy, J.

S.K. was admitted to United Health Services Hospitals, Inc. ("UHS") on February 22, 2024, under color of Mental Hygiene Law §9.39, which provides for emergency admission of a patient for immediate observation, care and treatment. S.K. was converted to two-physician certification status, pursuant to Mental Hygiene Law §9.27, on February 29, 2024. On March 1, 2024, S.K. submitted a written request for a hearing pursuant to Mental Hygiene Law §9.31. The Court set S.K.'s hearing [*2]request down for March 12, 2024.
On March 7, 2024 UHS filed a petition seeking an order to permit UHS to involuntarily treat S.K. over his objection (hereinafter referred to as "TOO"). The Court also set that matter down for March 12, 2024, so the two hearings could be held contemporaneously.
At the hearing before the Court on March 12, 2024, UHS was represented by Aswad & Ingraham, LLP, Kimberlee N. DeFazio, Esq. of counsel. Mental Hygiene Legal Services (3rd Dept.), Kristin Snyder, Esq., of counsel, appeared for S.K.. The Court heard testimony from Dr. Purushothaman Muthukanagaraj on behalf of UHS, and from S.K.. The testimony addressed elements relevant to both S.K.'s hearing request and UHS's TOO petition. The decision on S.K.'s request for discharge is a precursor to the need for a decision on the TOO; if UHS does not establish the retention of S.K. is appropriate, UHS's request for his involuntary treatment is rendered moot.
In order to authorize the involuntary confinement of a person in a psychiatric hospital, the Court must find that the person is "in need of retention." Mental Hygiene Law §§9.31, 9.01. The hospital must establish that the person has a mental illness; that care and treatment of the illness in a psychiatric hospital is essential to the person's welfare; and that the person's judgment is so impaired that the person is unable to understand the need for such care and treatment. Id. In addition, "the continued confinement of an individual must be based upon a finding that the person poses a real and present threat of substantial harm to himself or others." Matter of Scopes, 59AD 2d 203, 205 (3d Dept. 1977). The hospital bears the burden of proving that S.K.'s continued retention is appropriate by clear and convincing evidence. Addington v. Texas, 441 US 418 (1979); Scopes, supra.
Dr. Muthukanagaraj testified that S.K. has been diagnosed with schizoaffective disorder, bipolar type. He has no direct knowledge of any prior psychiatric admission; his attempt to testify to collateral evidence of one such admission was precluded as hearsay. Dr. Muthukanagaraj also testified that in his opinion, S.K. requires continued inpatient care and that his judgement is so impaired that he is unable to understand the need for that care. The doctor testified to S.K.'s exhibition of obsessive behavior, as indicated by his description of a years' long research and writing project on an esoteric topic relating to ancient African language.
Dr. Muthukanagraj testified that S.K. was brought to UHS's psychiatric emergency room by police, who reported their interaction with S.K. was initiated by a report from his family of his suicidal actions. After objection by S.K.'s counsel as to the hearsay nature of this testimony, Dr. Muthukanagaraj testified that the hospital solicited this collateral information from the police, and subsequently from S.K.'s family, to assist them in evaluating and treating S.K.. The testimony was allowed for that limited purpose - the doctor's use of it to undertake his professional duty - but not allowed as to the truth of the collateral statements given.
Dr. Muthukanagaraj testified that that he had no concern about S.K.'s risk of harm to others; that S.K. has not expressed or exhibited any suicidal ideations since admission, nor made any suicidal gestures; that he had exhibited no behavioral problems and had not required any STAT medication during his admission. Other than the collaterally reported suicidal gesture, Dr. Muthukanagaraj's testimony on the patient's risk of harm to himself was that his lack of insight, obsessive behavior and paranoid delusion (about his writing project) could lead him to make risky decisions which might cause himself harm. 
S.K. testified clearly and credibly that he did not make any suicide attempt. He reported in [*3]detail on the automotive repair project he was working on at the time his family called the police. S.K. denied any history of mental health issues or violence. He denied ever being suicidal or making any gestures of self-harm. He did discuss his writing project, describing it not as a delusion, but a passion. He also noted that his own beliefs and writings stem from a very non-religious perspective, which puts him in conflict at times with the very religious family members with whom he lives.
Active suicidal ideation and recent suicidal gestures or attempts clearly constitute risks of serious physical harm to a person. The narrow issue for the Court is whether the collateral information appropriately utilized by S.K.'s treating physician to formulate his medical opinion and initiate treatment recommendations necessarily satisfies the legal standard applicable in an MHL §9.31 hearing requested by a patient. The Court finds that such evidence, excluded under the hearsay rules, cannot satisfy the clear and convincing standard required. S.K.'s cogent and credible testimony, standing against the admissible testimony from the hospital on his risk of self-harm, precludes a finding of his being a risk of serious harm to himself. The doctor's testimony stemming from the observation of S.K. in the hospital, that "might lead to harm," does not satisfy the clear and convincing evidence standard. Scopes, supra; In re Benjamin T. 48 Misc 3d 1226 (A) (Sup Ct, Broome County 2015).
UHS is directed to release S.K. "forthwith." MHL §9.31(d). The Court notes the requirement that UHS provide discharge planning to S.K. in connection with his release. Id; MHL §29.15(f).
This Decision constitutes the Order of the Court.
Dated: March 19, 2024
HON. DAVID H. GUY
Acting Supreme Court Justice